**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re:<br><br>**HARRIS PHARMACEUTICAL, INC.,**<br><br>    Debtor, | Case No. 2:20-bk-8071-FMD<br><br><br>Chapter 7 |
| **AMY D. MAYER,** as Subchapter V Trustee of the Estate of Harris Pharmaceutical, Inc.,<br><br>    Plaintiff<br><br>v.<br><br>**UNITED HEALTH GROUP,**<br><br>    Defendant | Adv. Pro. No. 2:23-ap-00009-FMD |

**MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at Sam M. Gibbons U.S. Courthouse, 801 N. Florida Avenue, Suite 555, Tampa, Florida 33602, within twenty-one (21) days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.

Pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56(a), defendant UnitedHealth Group, Inc. (incorrectly identified as United Health Group) ("United")[1] submits its Motion for Summary Judgment and Memorandum of Law in Support of Motion for Summary Judgment. By the instant Adversary Proceeding, Amy D. Mayer, as Subchapter V Trustee (the "Trustee") of the Estate of Harris Pharmaceutical, Inc. (the "Debtor") seeks to avoid and recover three alleged preference payments that the Debtor made by an electronic funds transfer from the Debtor's account in the 90-days prior to the Debtor filing its Chapter 11 petition (the "Preference Period") in the total amount of $20,450.00 (the "Transfers").

Summary judgment must enter on two grounds: (1) the Transfers are all subject to the ordinary course of business defense under 11 U.S.C. § 547(c)(2)(A); and (2) the Transfers did not entitle United to receive more than it was otherwise entitled to receive under the Bankruptcy Code, and avoiding the Transfers would be of no benefit to the Debtor's estate.

First, the Transfers were all made in the ordinary course of business between the Debtor and United pursuant to 11 U.S.C. § 547(c)(2)(A) throughout the course of their relationship. The Transfers were made (i) on the same terms as the prior payments from the Debtor to United, (ii) in the full amount as all prior payments, (iii) on the same schedule as the prior payments, and (iv) under the same circumstances surrounding the payments as those surrounding prior payments. In short, there was no difference in any of the terms, amounts, timing, payment methodology, or surrounding circumstances, under which the Debtor paid United in the Preference Period as compared to the Pre-Preference Period (defined below). Based on the foregoing, summary judgment should enter in United's favor because there is no genuine issue of material fact that the

---

[1] UnitedHealth Group, Inc. is not the recipient of any of the Transfers; rather, its indirect subsidiaries, UnitedHealthcare Insurance Company ("UHIC") and Neighborhood Health Partnership, Inc. ("NHP") were the companies that issued the relevant Policies and would have been the recipients of any Transfers.

Transfers were made in the ordinary course of business between the Debtor and United pursuant to 11 U.S.C. § 547(c)(2)(A).

Second, the Transfers did not allow United to receive more than it was entitled to receive under the Bankruptcy Code and recovering the Transfer will not benefit the estate. If the Transfers had not been paid, United would have been entitled to a priority claim for such amounts under 11 U.S.C. § 507(a)(5). Under 11 U.S.C. § 1129(a)(9) and the Debtor's confirmed Plan (as defined below), priority claims under 11 U.S.C. § 507(a)(5) had to be paid in full. Accordingly, United's receipt of the Transfers did not allow it to receive more than it was entitled to receive under the Bankruptcy Code. In addition, were the Transfers avoided under 11 U.S.C. § 547(b), United would have a 11 U.S.C. § 507(a)(5) priority claim for the entire amount under 11 U.S.C. § 502(h), which would need to be immediately paid back to United in full under 11 U.S.C. § 1129(a)(9) and the Debtor's Plan. Accordingly, recovery of the Transfers provides no benefit to the estate as required under 11 U.S.C. § 550(a). Thus, summary judgment should also enter in United's favor because there is no genuine issue of material fact that: (i) the Transfers did not allow United to receive more than it was entitled to receive under the Bankruptcy Code under 11 U.S.C. § 547(b), or (ii) the avoidance and recovery of the Transfers would benefit the estate as required under 11 U.S.C. § 550(a). In support of its Motion, United relies on the Declaration of Paul J. Cirillo ("Cirillo Decl.") attached hereto as **Exhibit A**, and further states as follows:

**I.    Undisputed Material Facts**

    **A.    The Policies**

    1.    Neighborhood Health Partnership, Inc. ("NHPI") and UnitedHealthcare Insurance Company ("UHIC") are indirect subsidiaries of United, and they are providers of, among other

3

things, group dental, medical and accidental death and dismemberment ("AD&D") insurance coverage to their customers' eligible employees and their eligible dependents. (Cirillo Decl. ¶ 5.)

2. NHPI and the Debtor were parties to a group medical service policy with group number 06Y8556 beginning in August 2018 (the "2018 Policy") whereby NHPI provided medical insurance benefits to the Debtor's employees and such employees' eligible dependents in exchange for monthly premium payments. (Cirillo Decl. ¶ 6 & Ex. 1.) A true and accurate copy of the 2018 Policy is annexed to the Cirillo Declaration as **Exhibit 1**.

3. UHIC and the Debtor were parties to a group dental policy and a group AD&D policy, both with group number 06Y8556 and an effective date of July 1, 2019, whereby UHIC provided dental and AD&D benefits to the Debtor's employees and such employees' eligible dependents in exchange for monthly premium payments (the "2019 United Policies"). (Cirillo Decl. ¶ 7 & Ex. 2.) True and accurate copies of the 2019 United Policies are annexed to the Cirillo Declaration as **Exhibit 2**.

4. NHPI and the Debtor were parties to a group medical policy with a group number 06Y8556 with an effective date of July 1, 2019, that provided medical insurance benefits to the Debtor's employees and their eligible dependents in exchange for monthly premium payments (the "2019 NHPI Policy"). (Cirillo Decl. ¶ 8 & Ex. 3.) A true and accurate copy of the 2019 NHPI Policy is annexed to the Cirillo Declaration as **Exhibit 3**.

5. UHIC and the Debtor were parties to group policies with group numbers 06T8556 and 06L8672 with an effective date of July 1, 2020, whereby UHIC provided medical, dental, life, and AD&D insurance benefits to the Debtor's employees and their eligible dependents in exchange for monthly premium payments (the "2020 United Policies"). (Cirillo Decl. ¶ 9 & Ex. 4.) True

and accurate copies of the 2020 United Policies are annexed to the Cirillo Declaration as **Exhibit 4**.

6.   NHPI and the Debtor were parties to a group medical policy with group number 06Y8556 with an effective date of July 1, 2020, whereby NHPI provided medical insurance benefits to the Debtor's employees and their eligible dependents in exchange for monthly premium payments (the "2020 NHPI Policy", collectively with the 2020 United Policies, the 2019 NHPI Policy, the 2019 United Policies, and the 2018 Policy, the "Policies"). (Cirillo Decl. ¶ 10 & Ex. 5.)  A true and accurate copy of the 2020 NHPI Policy is annexed to the Cirillo Declaration as **Exhibit 5**.

7.   Under the Policies, monthly premium was due on the first of each month for that month's insurance coverage, subject to a thirty-one (31) day grace period (the "Grace Period"). (*See* Cirillo Decl. Ex. 1, §§ 3.4 and 3.5; Ex. 2, Art. 3; Ex. 3, §§ 3.4 and 3.5; Ex. 4, Art. 3 and §§ 3.4 and 3.5; Ex. 5, §§ 3.4 and 3.5.)  Each of the Transfers were to pay premium under the 2020 United Policies and the 2020 NHPI Policy for the months of August, September and October 2020. (Cirillo Decl. ¶ 11.)  During the months of August through October 2020, the Policies covered at least five employees.  (*Id.*)

   **B.   The Bankruptcy Case**

8.   On October 29, 2020 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 Subchapter V of Title 11 of the United States Code (the "Bankruptcy Code"). (*See* Case No. 2:20-bk-08071-FMD, ECF No. 1.)

9.   On November 1, 2020, the Debtor filed *Debtor's Emergency Motion for Authority to Pay Prepetition Wages* in which the biweekly payroll detail showed deductions taken from

employees' paychecks, which included deductions for health and dental benefits (the "Wages Motion"). (*See* Case No. 2:20-bk-08071-FMD, ECF No. 4, p. 6.)

10. On November 2, 2020, the Trustee was appointed the Subchapter V Trustee of the Debtor's case. (*See* Case No. 2:20-bk-08071-FMD, ECF No. 7.)

11. On October 11, 2021, the Debtor filed the *Debtor's Liquidating Chapter 11, Subchapter V, Plan of Reorganization* (the "Plan"). (*See* Case No. 2:20-bk-08071-FMD, ECF No. 256.)

12. On December 16, 2021, the Court entered the *Order Confirming Debtor's Liquidating Chapter 11, Subchapter V, Plan or Reorganization*. (*See* Case No. 2:20-bk-08071-FMD, ECF No. 319.)

  **C.** **The Pre-Preference Period**

13. From the inception of the Policies on August 1, 2018, through July 28, 2020 (the "Pre-Preference Period"), the Debtor paid all monthly premium for the Policies between 9 (nine) and 12 (twelve) days from the due date, without exception, and all within the contractual Grace Period. (Cirillo Decl. ¶ 12 & Ex. 6.) On average during the Pre-Preference Period, the monthly premium invoices were paid in full 10.1 days past the due date. (*Id*.) During the Pre-Preference Period, the monthly premium invoices were paid with a median of 10 days past the due date. (*Id*.) In addition, all premium payments for the Policies were made in full to United via electronic funds transfer from the Debtor's account. (*Id*.) A true and accurate copy of the chart showing the payment history of the Debtor for the policies (the "Payment History Chart") is annexed to the Cirillo Declaration as **Exhibit 6.**

**D.     The Preference Period and the Transfers**

14.     During the Preference Period, or July 28, 2020 through October 28, 2020, the Debtor paid all monthly premium invoices for the Policies between nine (9) and twelve (12) days from the due date, without exception, and all within the contractual Grace Period.  (Cirillo Decl. ¶ 13 & Ex. 6.)  On average during the Preference Period, the monthly premium invoices were paid in full 10.7 days past the due date.  (*Id*.)  Also, during the Preference Period, the monthly premium invoices were paid with a median of 11 days past the due date.  (*Id*.)  In addition, all premium for the Policies was paid in full to United via electronic funds transfer from the Debtor's account.  (*Id*.)

15.     Throughout the Preference Period, UHIC and NHPI did not send any demand letters, dunning letters, or similar correspondence; indeed, there was no need to as all invoices were paid timely.  (Cirillo Decl. ¶ 14.)

**E.     The Adversary Proceeding**

16.     On March 20, 2023, the Trustee initiated the instant Adversary Proceeding against United by filing the Complaint which seeks to avoid and recover the Transfers.  (*See* Adv. Pro. No. 2:23-ap-00009-FMD, ECF No. 1.)

17.     On June 5, 2023, United filed its Answer and Affirmative Defenses, which included United's fifth affirmative defense to the Adversary Proceeding that the Transfers had been incurred in the ordinary course of business or financial affairs of the Debtor and United under 11 U.S.C. § 547(c)(2)(A).  (*See* Adv. Pro. No. 2:23-ap-00009-FMD, ECF No. 10.)

**II.     Legal Standards**

**A.     Summary Judgment**

17.     Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56 made applicable to adversary proceedings through Fed. R. Bankr. P. 7056. "A properly supported motion for summary judgment is not defeated by the existence of a factual dispute." *Koehler v. Waypoint Res. Grp., LLC*, No. 8:18-CV-2071-T-60AAS, 2019 WL 5722117, at *1 (M.D. Fla. Nov. 5, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "Only the existence of a genuine issue of material fact will preclude summary judgment." *Id.*

18. "The moving party bears the initial burden of showing that there are no genuine issues of material fact." *Koehler,* 2019 WL 5722117, at *1 (citing *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004)). That burden may be satisfied by demonstrating that there is no evidence to support the nonmovant's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). "When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact." *Koehler,* 2019 WL 5722117, at *1 (citing *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," and mere conclusory statement are not enough to create an issue of material fact when there is none. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 586-87 (1986). "If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Koehler,* 2019 WL 5722117, at *1 (citing *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003)). As part of a motion for summary judgment, the court does not weigh the evidence or determine credibility. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

B.    **Bankruptcy Preference Law**

19.    The power to avoid preference payments is designed to "discourage creditors from 'racing to the courthouse to dismember the debtor during his slide into bankruptcy,' and to 'facilitate the prime bankruptcy policy of equality of distribution amount creditors of the debtor.'" *In re Isaac Leaseco, Inc.*, 389 F.3d 1205, 1209 (11th Cir. 2004) (quoting *Union Bank v. Wolas*, 502 U.S. 151, 161 (1991)).

20.    To effect the foregoing policy, 11 U.S.C. § 547(b) provides that

> Except as provided in subsections (c), (i), and (j) of this section, the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property—
>
> (1)    to or for the benefit of a creditor;
> (2)    for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3)    made while the debtor was insolvent;
> (4)    made—
>     (A)    on or within 90 days before the date of the filing of the petition; or
>     (B)    between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5)    that enables such creditor to receive more than such creditor would receive if—
>     (A)    the case were a case under chapter 7 of this title;
>     (B)    the transfer had not been made; and
>     (C)    such creditor received payment of such debt to the extent provided by the provisions of this title.

21.    11 U.S.C. § 547(f) in turn provides that "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."

III.   **Legal Defenses to Preference Claim**

A.    **Statutory Elements of 11 U.S.C. § 547(c)(2)(A)**

22.    Even if all of the elements of a preference are proven under 11 U.S.C. §547(b), the transfer may fall within one of the defenses delineated in 11 U.S.C. § 547(c), including that the

>    (c) The trustee may not avoid under this section a transfer—
>        . . . (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
>            (A)    made in the ordinary course of business or financial affairs of the debtor and the transferee…

    **B.**    **Ordinary Course of Business Defense**

23. The purpose of the ordinary course of business defense "'is to leave undisturbed normal financial relations, because [such an exception] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy.'" *In re Craig Oil Co.*, 785 F.2d 1563, 1566 (11th Cir. 1986) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 373–74 (1977), *reprinted in* 1978 U.S.C.C.A.N 5787, 6329.) Clearly, "[11 U.S.C.] § 547(c)(2) should protect those payments which do not result from 'unusual' debt collection or payment practices." *In re Craig Oil Co.,* 785 F.2d at 1566. "Stated another way, the ordinary course of business exception aims to protect the normal, ordinary relationship between debtors and creditors in recurring credit transactions." *In re Moltech Power Sys., Inc.,* 327 B.R. 675, 679 (Bankr. N.D. Fla. 2005) (citations omitted).

24. The ordinary course inquiry is subjective "insofar as it requires courts to consider whether the transfer was ordinary in relation to the 'other business dealings between *that* creditor and *that* debtor.'" *In re Globe Mfg.,* 567 F.3d 1291, 1298 (11th Cir. 2009) (emphasis in original) (internal quotations omitted).

25. "In determining whether transfers are protected from avoidance based upon the ordinary course of business, courts consider: 1) the prior course of dealings between the parties; 2) the amount of the payments; 3) the timing of the payments; and 4) the circumstances surrounding the payments." *In re JSL Chem. Corp.*, 424 B.R. 573, 579 (Bankr. S.D. Fla. 2010)

(referencing *Jensen v. Raymond Bldg. Supply Corp. (In re Homes of Port Charlotte Florida, Inc.)*, 109 B.R. 489, 491 (Bankr. M.D. Fla. 1990)).

26. "Under this test, the parties' transactions during the pre-preference period are examined to determine the parties' ordinary course of business. Transactions occurring during the preference period are then compared to the parties' pre-preference transactions to see if they were made in a similar manner." *In re JSL Chem. Corp.*, 424 B.R. at 579 (referencing *Moltech Power*, 327 B.R. at 680).

27. Thus, the court in preference cases generally "should protect those payments which do not result from unusual debt collection or payment practices." *In re Forex Fidelity Intern.*, 222 F. App'x 806, 809 (11th Cir. 2007) (quoting *In re Craig Oil Co.*, 785 F.2d 1563, 1566 (11th Cir. 1986)). In such cases, the court's general inquiry is "to determine whether there is anything unusual about the transactions underlying the preferential payment." *In re Ameri P.O.S. Inc.*, 355 B.R. 876, 883 (Bankr. S.D. Fla. 2006).

**IV. The Court Should Grant United Summary Judgment under 11 U.S.C. § 547(c)(2)(A)**

    **A. The Transfers were made in the ordinary course of business as a matter of law.**

28. The Transfers were made in the ordinary course of business between United and the Debtor, and continued the undisturbed normal financial relations between the parties without anything unusual about how the Transfers were made.

29. During the Pre-Preference Period and the Preference Period, United and the Debtor were involved in a normal business relationship wherein the Debtor paid United monthly premium in exchange for United providing group insurance coverage relating to medical, dental, life, and AD&D for the Debtor's employees and their eligible dependents. (Cirillo Decl. ¶ 5.) Moreover, as described below, the Debtor and United engaged in this business relationship on normal terms;

that is, United did not engage in any unusual actions during the Preference Period. (Cirillo Decl. ¶¶ 12-14.)

30.     The ordinary course defense is applicable where a transfer was (i) "in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee," and (ii) "made in the ordinary course of business or financial affairs of the debtor and the transferee." *See* 11 U.S.C. § 547(c)(2). Here, both elements of this defense are easily satisfied.

31.     First, it cannot be contested that the Debtor incurred this debt—premium relating to group medical, dental, life, and AD&D insurance coverage of the Debtor's eligible employees and their eligible dependents—in the ordinary course of the business of the Debtor and United's subsidiaries, UHIC and NHPI. It is in the ordinary course of UHIC and NHPI's businesses to enter into group insurance policies similar to the Policies at issue here. (Cirillo Decl. ¶ 5.) Similarly, it is clear from the Wages Motion that the Debtor, like most other employers in this country, offered group insurance benefits to its employees as part of their pay package. (*See* Wages Motion, ¶¶ 8-10.)

32.     Next, the consistent course of dealing between United and the Debtor during the Pre-Preference Period and the Preference Period establishes that the Transfers were made in the ordinary course of business of the Debtor and United. While the 11 U.S.C. § 547(c)(2) inquiry is a factual one, "courts consider: 1) the prior course of dealings between the parties; 2) the amount of the payments; 3) the timing of the payments; and 4) the circumstances surrounding the payments." *In re JSL Chem. Corp.*, 424 B.R. at 57 (referencing *Jensen v. Raymond Bldg. Supply Corp. (In re Homes of Port Charlotte Florida, Inc.),* 109 B.R. 489, 491 (Bankr. M.D. Fla. 1990)).

The undisputed facts establish that each and every one of these factors demonstrates that the Transfers were made in the ordinary course of business between United and Debtor.

33. The Payment History Chart shows that the parties' course of dealing during the Preference Period is not just consistent, but nearly identical, with the Pre-Preference Period, including the timing, amount, and method of payment. (*See* Cirillo Decl. ¶¶ 12-13 & Ex. 6.) During the Pre-Preference Period, the Debtor's practice was to pay the monthly premium invoices in full between nine (9) and twelve (12) days past the due date, and on average 10.1 days past the due date. (*Id*.) This is practically identical to the timing of payments in the Preference Period, which ranged from nine (9) to twelve (12) days past the due date and on average 10.7 days past the due date. (*Id*.) The median time of payment from the due date is also nearly identical: 10 days in the Pre-Preference Period and 11 days in the Preference Period. (*Id.*) This consistent range of the timing of payments is overwhelming evidence that each and every one of the Transfers was made in the ordinary course of business. *See e.g. In re Ameri P.O.S. Inc.*, 355 B.R. 876, 882-84 (Bankr. S.D. Fla. 2006) (granting partial summary judgment to defendant and holding that the ordinary course defense was established where range of days between invoice and payment during the pre-preference period was 130 days but 49% of those payments were paid within 9 to 15 days after invoice while challenged preference payments were paid 7, 8, 11, 13, and 14 days after invoice); *T.B. Home Sewing Enters., Inc. v. Tulip Prod. Polymerics, Inc. (In re T.B. Home Sewing Enters., Inc.)*, 173 B.R. 782, 788-89 (Bankr. N.D. Ga. 1993) (granting summary judgment to defendant and finding late payments to be made in ordinary course when payments in preference period were made an average of 93.42 days after invoice and the average during the pre-preference period was 87.36 days); *In re Opus E., LLC*, 528 B.R. 30, 98 (Bankr. D. Del. 2015) (finding that transfers were within ordinary course defense even when preference period payments varied in

timing from invoice date from pre-preference period payments by 15 days on average and 14 days by median), *aff'd sub nom. In re: Opus E., LLC*, No. 09-12261, 2016 WL 1298965 (D. Del. Mar. 31, 2016), *aff'd sub nom. In re Opus E. LLC*, 698 F. App'x 711 (3d Cir. 2017).

34. Moreover, the Policies expressly authorize premium to be paid within 31 days of the due date.  (*See* Cirillo Decl. Ex. 1, §§ 3.4 and 3.5; Ex. 2, Art. 3; Ex. 3, §§ 3.4 and 3.5; Ex. 4, Art. 3 and §§ 3.4 and 3.5; Ex. 5, §§ 3.4 and 3.5.)  Thus, each and every payment from August 2018 through the Preference Period was paid within the contractual terms of the Policies.  Again, this is overwhelming evidence of the ordinary course defense.  *See In re Tennessee Valley Steel Corp.*, 201 B.R. 927, 936 (Bankr. E.D. Tenn. 1996) (finding that "payments made within the contractual terms agreed upon by the parties are ordinary"); *In re Parkline Corp.*, 185 B.R. 164, 169 (Bankr. D.N.J. 1994) (finding that contractual terms may establish the ordinary course of business between the parties).

35. Additionally, other factors that courts may look to in their analysis under 11 U.S.C. § 547(c)(2) support the conclusion that the Transfers were, in fact, made in the ordinary course. First, this was a long-running relationship that significantly pre-dated the Petition Date.  United had been providing the foregoing insurance services for over two years prior to the Petition Date. (*See* Cirillo Decl. Exs. 1-6.)  Second, all of the Debtor's payments – both during and prior to the Preference Period – were made in the invoice amount, which amount remained relatively consistent.  (*See* Cirillo Decl. Ex. 6.)  For example, this is also borne out in reviewing the amounts, which averaged approximately $7,900 in the Pre-Preference Period and approximately $6,800 in the Preference Period.  (*Id.*)  Third, the Payment History Chart shows that the form of tender of the Transfers was consistent with the parties' prior dealings.  (*See* Cirillo Decl. Exs. 6.)  In particular, all of the Debtor's payments were made by electronic funds transfer, both in the Pre-

Preference Period and the Preference Period. (*See* Cirillo Decl. Ex. 6.) Finally, there is no evidence that United engaged in any unusual collection practices or that United took advantage of the Debtor's deteriorating financial condition. (Cirillo Decl. ¶ 14.) In sum, the Court should enter summary judgment in United's favor on United's Fifth Affirmative Defense and dismiss the instant Adversary Proceeding.

**V.    The Court Should Also Grant United Summary Judgment Because the Trustee Will be Unable to Establish As a Matter of Law That (i) the Transfers Allowed United to Receive More Than it was Entitled to Receive under the Bankruptcy Code or (ii) the Avoidance and Recovery of the Transfers Will Benefit the Estate.**

36.    To establish a prima facie case for a preference, the Trustee must establish under 11 U.S.C. § 547(b)(5) that the Transfers enabled United to receive more than it would have received if "(A) the case were a case under Chapter 7 of this title; (B) the [Transfers] had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of [title 11 of the United States Code]." To satisfy 11 U.S.C. § 547(b)(5), the Trustee must demonstrate "that the [creditor] received more than he would have received if the payment had not been made and he would have been paid by a distribution from the estate of this chapter 7 bankruptcy." *In re Hagen*, 922 F.2d 742, 743 (11th Cir. 1991). Courts have routinely taken into account events that transpired post-petition to determine whether § 547(b)(5) has been met. *See In re LCO Enterprises*, 12 F.3d 938, 938-44 (9th Cir. 1993) (observing that 11 U.S.C. § 547(b)(5) analysis is not done in vacuum and what actually happens in bankruptcy case must be taken into account; holding that preference claim fails 11 U.S.C. § 547(b)(5) test where payments were made under contract assumed under 11 U.S.C. § 365 during Chapter 11 case).

37.    Next, even if a Transfer is avoided under 11 U.S.C. § 547(b), it should only be recovered under 11 U.S.C. § 550 if it will benefit the estate. *See* 11 U.S.C. § 550(a) ("to the extent

15

a transfer is avoided under section . . . 547 . . . of this title, the trustee may recover, *for the benefit of the estate*, the property transferred . . . ." [emphasis added]).

38. Here, when the Debtor confirmed the Plan, United would not have received more than it was otherwise entitled to under the Bankruptcy Code because if the Transfers had not been made, United would have had a priority claim for such amounts under 11 U.S.C. § 507(a)(5) that would have to be paid in full under the unequivocal terms of the Plan in accordance with 11 U.S.C. § 1129(a)(9).

39. Said differently, if the Transfers were avoided and recovered, they would have to be paid right back to United under the Plan, and 11 U.S.C. §§ 502(h) and 507(a)(5), and, thus, there would be no benefit to the estate under 11 U.S.C. § 550(a).

40. The United States Supreme Court has recognized that 11 U.S.C. § 507(a)(5) "covers fringe benefits that complete a pay package—typically pension plans, and group health, life, and disability insurance—whether unilaterally provided by an employer or the result of collective bargaining." *Howard Delivery Serv. Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 654 (2006). Thus, it is well-established that claims for benefits relating to a debtor's group insurance plans for medical, dental, life, and AD&D, including unpaid premium, incurred in the 180-days before the petition date are entitled to priority treatment under 11 U.S.C. § 507(a)(5). *See Howard Delivery Serv. Inc.*, 547 U.S. at 654 (explaining that the purpose of Section 507(a)(5) priority is to afford priority status to unsecured creditors' claims for contributions to an employee benefit plan by capturing portions of employee compensation for services rendered but not covered by 11 U.S.C. § 507(a)(4)'s wage priority); *see, e.g.*, *Lummus Indus., Inc. v. Blue Cross and Blue Shield of Georgia, Inc.* (*In re Lummus Indus., Inc.*), 193 B.R. 615, 616-619 (Bankr. M.D. Ga. 1996)[2].

---

[2] There is significant case law across the country supporting that unpaid premiums and similar fees for group employee insurance benefits are entitled to priority. *See In re Saco Local Dev. Corp.*, 711 F.2d 441, 442 (1st Cir. 1983) (premium

41. Here, the Transfers qualified for priority under 11 U.S.C. § 507(a)(5). They were payments of premium under the Debtor's group insurance plans for medical, dental, life, and AD&D for the months of August 2020 through October 2020—well within 180 days of the Petition Date of October 29, 2020. (Cirillo Decl. ¶13.) In addition, as of June 2020, because at least 5 employees were covered under the Policy, the 11 U.S.C. § 507(a)(5) cap would be approximately $70,000, and, therefore, the Transfers would have fallen easily within such cap. (Cirillo Decl. ¶11.) The Plan identifies only two wage priority creditors. (Case No. 2:20-bk-08071-FMD, ECF No. 256, p. 5.) Even if those former employees have allowed 11 U.S.C. § 507(a)(4) claims in the maximum amount, which would aggregate to $27,300, this would still leave $40,950 remaining under the aggregate 11 U.S.C. § 507(a)(5) cap and the Transfers easily fall within that capped amount.

42. Since the Plan provided that the Debtor would pay Class 1 claims that were comprised of all allowed claims entitled to priority under 11 U.S.C. § 507(a), (Case No. 2:20-bk-08071-FMD, ECF No. 256, p. 5), United's receipt of the Transfers did not allow it to receive more than it was entitled to under the Bankruptcy Code. Thus, the Trustee will be unable to show that United was preferred by receipt of the Transfers under 11 U.S.C. § 547(b)(5).

---

for employee group life, health and disability insurance); *Ivey v. Great W. Life & Annuity Ins. Co.*, 308 B.R. 752, 758 (M.D.N.C. 2004) (fees due for administration of self-funded health plan and premiums due for stop loss coverage related to claims under health plan entitled to priority treatment under § 507(a)(5)); *Aetna Life Ins. Co. v. Montaldo Corp. (In re Montaldo Corp.)*, 232 B.R. 853, 855 (M.D.N.C. 1997) (premium for group life and health insurance entitled to priority treatment under § 507(a)(5)); *In re Allegheny Int'l, Inc.*, 145 B.R. 820, 822-823 (W.D. Pa. 1992) (premiums for unpaid group life, disability and accidental death and dismemberment insurance, as well as fees for administering self-insured medical benefit plans entitled to priority treatment under § 507(a)(5)); *In re Tropicana Entm't, LLC*, No. 08-10856 (KJC), 2015 WL 6112064, at *10 (Bankr. D. Del. Oct. 14, 2015) (premiums under health and dental insurance policies entitled to priority treatment under § 507(a)(5)); *Falcon Creditor Trust v. Blue Cross Blue Shield (In re Falcon Prods.)*, 372 B.R. 474, 482 (Bankr. E.D. Mo. 2007) (fees for administration of self-insured health plan and premiums for stop-loss insurance entitled to priority treatment under § 507(a)(5)), *aff'd*, 2008 WL 363045 (E.D. Mo. Feb. 8, 2008); *In re Build Tech Sys.*, 339 B.R. 328, 332 (Bankr. D. Vt. 2006) (same); *In re Cardinal Indus.*, 164 B.R. 76, 77-79 (Bankr. S.D. Ohio 1993) (fees and costs incurred in administering self-insured health plan entitled to priority treatment under § 507(a)(5)).

43. Similarly, avoiding and recovering the Transfers would not benefit the Debtor's estate as required under 11 U.S.C. § 550(a), because any avoided Transfers would have to be paid back immediately to United under 11 U.S.C. §§ 502(h), 507(a)(5), and 1129(a)(9)(B), as well as the terms of the Plan. As noted above, the Plan required payment in full of allowed priority claims under 11 U.S.C. § 507(a)(5) as required by 11 U.S.C. § 1129(a)(9)(B).

44. This case is on all fours with *In re Falcon Prod., Inc.*, No. 4:07-CV-1495CAS, 2008 WL 363045, at *1 (E.D. Mo. Feb. 8, 2008). In that case, a liquidating trust brought a preference claim against Blue Cross and Blue Shield for pre-petition payments made for administrative service fees and stop loss premiums in connection with the debtors' self-funded health plan. *Id.*, *1-3. The District Court affirmed the Bankruptcy Court's order granting summary judgment to Blue Cross and Blue Shield. The District Court reasoned that if Blue Cross and Blue Shield returned the transfers as preferences it would be entitled to file a claim under 11 U.S.C. § 502(h) and that claim would be entitled to priority treatment under 11 U.S.C. § 507(a)(5). *Id.*, *6-9. Accordingly, the District Court affirmed the dismissal of the preference claim because recovering the transfers under 11 U.S.C. § 550(a) must be to benefit the bankruptcy estate and there would be no benefit to the estate where the debtors' confirmed plan required that 11 U.S.C. § 507(a)(5) claims be paid in full. *Id.*, *9-10. Indeed, the Court observed that avoiding and recovering the transfers would be futile and serve no purpose. *Id.*, *10.

45. Similarly, there would be no benefit to this estate under 11 U.S.C. § 550(a) to avoid and recover the Transfers because United would have a priority claim for such amounts under 11 U.S.C. §§ 507(a)(5) and 502(h) that would have to be repaid immediately to United under the Plan. *In re Bankvest Cap. Corp.*, 375 F.3d 51, 71 (1st Cir. 2004) ("The fact that [the defendant] would

be entitled to receive exactly what it would be forced to return through avoidance renders avoidance pointless").

46. Accordingly, summary judgment should be entered in favor of United and the instant Adversary Proceeding dismissed because the undisputed facts establish that (i) the Transfers did not allow United to receive more than it was entitled to receive under the Bankruptcy Code, and (ii) avoidance and recovery of the Transfers would not benefit the estate.

## VI. Conclusion

The undisputed facts show that Transfers cannot be avoided and recovered by the Trustee because (i) the Transfers were made in the ordinary course of business between the Debtor and United pursuant to 11 U.S.C. § 547(c)(2)(A) and (ii) the Transfers did not allow United to receive more than it was entitled to receive under the Bankruptcy Code, and the avoidance and recovery of the Transfers would not benefit the estate. Accordingly, summary judgment should enter in United's favor and against the Trustee, a final judgment should be entered in this adversary proceeding and dismissed with prejudice.

Dated: July 13, 2023

Respectfully submitted,

SHIPMAN & GOODWIN LLP

*/s/ Alison P. Baker*
Alison P. Baker, Esq.
Florida Bar No.: 114041
300 Atlantic Street, 3rd Floor
Stamford, Connecticut 06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
abaker@goodwin.com

*Counsel for UnitedHealth Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of July, 2023, a copy of the foregoing was filed electronically via operation of the Court's CM/ECF Electronic Filing System. A Notice of Electronic Filing will be sent by e-mail to all parties via operation of the Court's CM/ECF Electronic Filing System or by mail to anyone unable to accept electronic filing as indicated on the Notice. Parties may access this filing through the Court's CM/ECF System.

*/s/ Alison P. Baker*
Alison P. Baker, Esq.
Florida Bar No.: 114041
