<u>EXHIBIT 5</u>

# Neighborhood Health Partnership, Inc.

# Group Policy
# For
# HARRIS PHARMACEUTICAL INC

# UnitedHealthcare
# NHP POS

**Group Number:** G/GA6Y8556BW **Health Plan:** BQ - 4J **Prescription Code:** NH36
**Effective Date:** July 1, 2020

# Group Policy

# Neighborhood Health Partnership, Inc.

495 N. Keller Road
Maitland, FL 32751

1-800-899-6500

This Policy is entered into by Neighborhood Health Partnership, Inc. and the "Group," as described in Exhibit 1.

When used in this document, the words "we," "us," and "our" refer to Neighborhood Health Partnership, Inc.

Upon our receipt of the signed Group *Application* and payment of the first Policy Charge, this Policy is executed. The Group's *Application* is made a part of this Policy.

We agree to provide Benefits for Covered Health Care Services stated in this Policy, including the attached *Certificate(s) of Coverage* and *Schedule(s) of Benefits,* subject to the terms, conditions, exclusions, and limitations of this Policy. This Policy replaces and overrules any previous agreements relating to Benefits for Covered Health Care Services between the Group and us. The terms and conditions of this Policy will in turn be overruled by those of any future agreements relating to Benefits for Covered Health Care Services between the Group and us.

We are not an employer or plan administrator for any purpose with respect to the administration or provision of benefits under the Group's benefit plan. We are not responsible for fulfilling any duties or obligations of an employer or plan administrator with respect to the Group's benefit plan.

This Policy is effective on the date shown in Exhibit 1 and continues in force by the timely payment of the required Policy Charges when due, subject to the end of this Policy as provided in Article 5.

When this Policy ends, as described in Article 5, this Policy and all Benefits under this Policy will end at 12:00 midnight on the date the Policy ends.

This Policy is issued as described in Exhibit 1.

Issued By:

Neighborhood Health Partnership, Inc.

*Gregory Reidy,CEO*

# Article 1: Glossary of Defined Terms

*The terms used in this Policy have the same meanings as those defined in Section 9: Defined Terms* in the attached *Certificate(s) of Coverage.* In addition, the following terms apply:

**Coverage Classification** - one of the categories of coverage described in Exhibit 2 for rating purposes (for example: Subscriber only, Subscriber and spouse, Subscriber and children, Subscriber and family).

**Material Misrepresentation** - any oral or written communication or conduct, or combination of communication and conduct, that is untrue and is intended to create a misleading impression in the mind of another person. A misrepresentation is material if a reasonable person would attach importance to it in making a decision or determining a course of action, including but not limited to, the issuance of a policy or coverage under a policy, calculation of rates, or payment of a claim.

# Article 2: Benefits

Subscribers and their Enrolled Dependents are entitled to Benefits for Covered Health Care Services subject to the terms, conditions, limitations and exclusions stated in the *Certificate(s) of Coverage* and *Schedule(s) of Benefits* attached to this Policy. Each *Certificate of Coverage* and *Schedule of Benefits,* including any Riders and Amendments, describes the Covered Health Care Services, required Co-payments, and the terms, conditions, limitations and exclusions related to coverage.

# Article 3: Premium Rates and Policy Charge

## 3.1 Premiums

Monthly Premiums payable by or on behalf of Covered Persons are shown in the *Schedule of Premium Rates* in Exhibit 2 of this Policy or in any attached *Notice of Change.*

We have the right to change the *Schedule of Premium Rates* as described in Exhibit 1 of this Policy. We also have the right to change the *Schedule of Premium Rates* at any time if the *Schedule of Premium Rates* was based upon a Material Misrepresentation that resulted in the Premium rates being lower than they would have been if the Material Misrepresentation had not been made. We have the right to change the *Schedule of Premium Rates* for this reason retroactive to the effective date of the *Schedule of Premium Rates* that was based on the Material Misrepresentation.

## 3.2 How Is the Policy Charge Calculated?

The Policy Charge will be calculated based on the number of Subscribers in each Coverage Classification that we show in our records at the time of calculation. The Policy Charge will be calculated using the Premium rates in effect at that time. Exhibit 1 describes the way in which the Policy Charge is calculated.

The Group is solely responsible for enrollment and Coverage Classification changes (including the end of a Covered Person's coverage) and for the timely payment of the Policy Charges.

## 3.3 When Is the Policy Charge Adjusted?

We may make retroactive adjustments for any additions or terminations of Subscribers or changes in Coverage Classification that are not reflected in our records at the time we calculate the Policy Charge. We will not grant retroactive credit for any change happening more than 45 days prior to the date we received notification of the change from the Group. We also will not grant retroactive credit for any calendar month in which a Subscriber has received Benefits.

The Group must notify us in writing within 60 days of the effective date of enrollments, terminations, or other changes. The Group must notify us in writing each month of any change in the Coverage Classification for any Subscriber.

If premium taxes, guarantee or uninsured fund assessments, or other governmental charges relating to or calculated in regard to Premium are either imposed or increased, those charges will be added to the Premium at that time. In addition, any change in law or regulation that affects our cost of operation may result in an increase

in Premium in an amount we determine.

## 3.4 How Is the Policy Charge Paid?

The Policy Charge is payable to us in advance by the Group as described under "Payment of the Policy Charge" in Exhibit 1. The first Policy Charge is due and payable on or before the effective date of this Policy. Future Policy Charges are due and payable no later than the first day of each payment period shown in item 6 of Exhibit 1, while this Policy is in force.

All payments shall be made in United States currency, in immediately available funds, and shall be sent to us at the address on the invoice, or at another address that we may designate in writing. The Group agrees not to send us payments marked "paid in full", "without recourse", or similar language. In the event that the Group sends such a payment, we may accept it without losing any of our rights under this Policy and the Group will remain obligated to pay any and all amounts owed to us.

Late payment charges are assessed for any Policy Charge not received within 10 calendar days following the due date. There will be a service charge added to the Group's account for any check returned for non-sufficient funds. The names of all Covered Persons must be attached when payment is made.

The Group will reimburse any attorney's fees and costs related to collecting past due Policy Charges.

## 3.5 Does a Grace Period Apply?

A grace period of 31 days will be granted for the payment of any Policy Charge not paid when due. During the grace period, this Policy will continue in force. The grace period will not extend beyond the date this Policy ends.

The Group is responsible for payment of the Policy Charge during the grace period. If we receive written notice from the Group to end this Policy during the grace period, we will adjust the Policy Charge so that it applies only to the number of days this Policy was in force during the grace period.

This Policy ends as described in Article 5.1 if the grace period expires and the past due Policy Charge remains unpaid.

# Article 4: Eligibility and Enrollment

## 4.1 What Are the Eligibility Rules?

Eligibility rules for each class are stated in Exhibit 2 and in the Group *Application*. The eligibility rules stated in Exhibit 2 are in addition to those shown in *Section 3: When Coverage Begins* of the *Certificate of Coverage.*

## 4.2 Initial Enrollment Period

Eligible Persons and their Dependents may enroll for coverage under this Policy during the Initial Enrollment Period. The Initial Enrollment Period is set by the Group.

## 4.3 Open Enrollment Period

An Open Enrollment Period will be provided for each class, as shown in Exhibit 2. During an Open Enrollment Period, Eligible Persons may enroll for coverage under this Policy.

## 4.4 Effective Date of Coverage

The effective date of coverage for enrolled Eligible Persons and their Dependents is stated in Exhibit 2.

# Article 5: End of Policy

## 5.1 When Does the Policy End?

This Policy and all Benefits for Covered Health Care Services will automatically end on the earliest of the dates shown below:

A.  On the last day of the grace period if the Policy Charge remains unpaid and written notice of termination was sent to the Group within 45 days after the due date. The Group remains responsible for payment of the Policy Charge for the period of time this Policy remained in force during the grace period.

B.  On the date specified by the Group, after at least 45 days prior written notice to us that this Policy will end.

C.  On the date we specify, after at least 45 days prior written notice to the Group, that this Policy will end due to the Group's violation of the participation and contribution rules as shown in Exhibit 1.

D.  On the date we specify, after at least 45 days prior written notice to the Group, that this Policy will end because the Group performed an act, practice or omission that constituted fraud or made an intentional misrepresentation of a fact in a written agreement signed by the Group that was material to the execution of this Policy or to the provision of coverage under this Policy. In this case, we have the right to rescind this Policy back to either:

- ▪ The effective date of this Policy.

- ▪ The date of the act, practice or omission, if later.

E.  On the anniversary renewal date we specify, after at least 90 days prior written notice to the Group, and to each Subscriber that this Policy will end because we will no longer issue this particular type of group health benefit plan within the applicable market.

F.  On the anniversary renewal date we specify, after at least 180 days prior written notice to the applicable state authority and to the Group and to each Subscriber, that this Policy will end because we will no longer issue any employer health benefit plan within the applicable market.

## 5.2 Payment When the Policy Ends

When the Policy ends, the Group is and will remain responsible to us for the payment of any and all Premiums which are unpaid at the time the Policy ends. This will include a pro rata portion of the Policy Charge for any period this Policy was in force during any grace period preceding the end of the Policy.

# Article 6: General Provisions

## 6.1 What Is the Entire Policy?

This Policy, the *Certificate(s) of Coverage,* the *Schedule(s) of Benefits,* the Group *Application*, and any Amendments, *Notices of Change*, and Riders, make up the entire Policy.

## 6.2 Dispute Resolution

Parties are encouraged to attempt, in good faith, to resolve the dispute amongst themselves. In the event the dispute is not resolved within 30 days after one party has received written notice of the dispute from the other party, and either party wishes to pursue the dispute further, the dispute may be submitted to arbitration as noted below.

The parties acknowledge that because this Policy affects interstate commerce, the *Federal Arbitration Act* applies. If the Group wishes to seek further review of the dispute, it must submit the dispute to arbitration according to the rules of the *American Arbitration Association.*

Arbitration will take place in Hartford County, Connecticut.

The matter must be submitted to arbitration within one year of the date notice of the dispute was received. The arbitrators will have no power to award any punitive or exemplary damages or to vary or ignore the provisions of this Policy, and will be bound by controlling law.

Arbitration is not binding and does not deprive the courts of jurisdiction. The Group does not forfeit any right to seek judicial resolution of the dispute as a result of arbitration.

No legal action may be brought to recover on this Policy within 60 days after written proof of loss has been given as required by this Policy. No such action may be brought after 5 years from the time written proof of loss is required to be given.

## 6.3 Statements by Group

All statements made by the Group, in the absence of fraud, will be deemed representations and not warranties and that no statement made for the purpose of effecting coverage will avoid coverage or reduce benefits. We will not use any statement made by the Group to void the Policy unless it is a fraudulent, written statement signed by the Group.

## 6.4 Amendments and Alterations

Amendments and Riders to this Policy are effective upon the Group's next anniversary date, unless otherwise permitted by law. Other than changes to Exhibit 2 stated in a *Notice of Change* to Exhibit 2, no change will be made to this Policy unless made by an Amendment or a Rider which is signed by one of our authorized executive officers and consistent with applicable notice requirements. No agent has authority to change this Policy or to waive any of its provisions.

## 6.5 Our Relationship with Providers and Groups

We have agreements in place that govern the relationship between us, our Groups and Network providers, some of which are affiliated providers. Network providers enter into agreements with us to provide Covered Health Care Services to Covered Persons.

The relationship between a Network provider and any Covered Person is that of provider and patient. The Network provider is solely responsible for the services provided. The relationship between any Group and any Covered Person is that of employer and employee, Dependent, or any other category of Covered Person described in the Coverage Classifications shown in this Policy.

The Group is solely responsible for enrollment and Coverage Classification changes (including the end of a Covered Person's coverage) and for the timely payment of the Policy Charges.

## 6.6 Records

We may require information related to the Policy, from the Group. Upon request, the Group must provide us with the requested information and proofs which may include:

• All documents provided to the Group by an individual in connection with coverage.

• The Group's payroll.

• Any other records pertinent to the coverage under this Policy.

We have the right to request this information at any reasonable time. This applies to all Covered Persons, including Enrolled Dependents whether or not they have signed the Subscriber's enrollment form.

We agree that such information and records will be considered confidential.

We have the right to release any and all records concerning health care services which are needed to administer the terms of this Policy including records for appropriate medical and quality review or as required by law or regulation.

During and after the term of this Policy, we and our related entities may use and transfer the information gathered under this Policy for research and analytic purposes.

## 6.7 Administrative Services

The services needed to administer this Policy and the Benefits provided under it will be provided in accordance with our standard administrative procedures or those standard administrative procedures of our designee. If the Group requests that administrative services be provided in a manner other than in accordance with these standard procedures, including requests for non-standard reports, the Group must pay for such services or reports at the then current charges for such services or reports.

We may offer to provide administrative services to the Group for certain wellness programs including, but not limited to, fitness programs, biometric screening programs and wellness coaching programs.

## 6.8 Employee Retirement Income Security Act (ERISA)

When this Policy is purchased by the Group to provide benefits under a health and welfare plan governed by the federal *Employee Retirement Income Security Act* 29 U.S.C., 1001 et seq., we will not be named as, and will not be, the plan administrator or the named fiduciary of the health and welfare plan, as those terms are used in ERISA.

## 6.9 Do We Require Examination of Covered Persons?

In the event of a question or dispute concerning Benefits for Covered Health Care Services, we may require that a Network Physician, of our choice examine the Covered Person at our expense unless a claim is pending.

## 6.10 What Happens When There Is a Clerical Error?

Clerical error will not deprive any individual of Benefits under this Policy or create a right to Benefits. Failure to report enrollments is not a clerical error. We will not provide retroactive coverage for Eligible Persons when the Group fails to report enrollments. Failure to report the end of coverage will not continue the coverage for a Covered Person beyond the date it is scheduled to end. Upon discovery of a clerical error, any needed adjustment in Premiums will be made. However, we will not grant any such adjustment in Premiums or coverage to the Group for more than 60 days of coverage prior to the date we received notificatio n of the clerical error.

## 6.11 Is Workers' Compensation Affected?

Benefits provided under this Policy do not substitute for and do not affect any requirements for coverage by workers' compensation insurance.

## 6.12 Conformity with Law

Any provision of this Policy which, on its effective date, is in conflict with the requirements of state or federal statutes or regulations (of the jurisdiction in which this Policy is delivered) is deemed to be amended to follow the minimum requirements of those statutes and regulations.

## 6.13 Notice

When we provide written notice regarding Policy administration to the Group's authorized representative. Once delivered, that notice is deemed notice to all affected Subscribers and their Enrolled Dependents. The Group is responsible for giving notice to Covered Persons on a timely basis.

Any notice sent to us under this Policy and any notice sent to the Group must be addressed as described in Exhibit 1.

## 6.14 Continuation Coverage

We agree to provide Benefits under this Policy for those Covered Persons who are eligible to continue coverage under federal or state law, as described in *Section 4: When Coverage Ends* of the *Certificate of Coverage.*

We will not provide any administrative duties with respect to the Group's compliance with federal or state law. All duties of the plan sponsor or plan administrator remain the sole responsibility of the Group, including but not limited to notification of COBRA and/or state law continuation rights and billing and collection of Premium.

## 6.15 Subscriber's Individual Certificate

We will issue *Certificate(s) of Coverage, Schedule(s) of Benefits,* and any attachments to the Group for delivery to each Subscriber. The *Certificate(s) of Coverage, Schedule(s) of Benefits,* and any attachments will show the Benefits and other provisions of this Policy. In addition, the *Certificate(s) of Coverage* and *Schedule(s) of Benefits* may be available online at www.myuhc.com.

## 6.16 Summary of Benefits and Coverage

We will provide a *Summary of Benefits and Coverage ("SBC"),* as required by the *Affordable Care Act* and related regulations *("ACA"),* to the Group for each benefit plan purchased. The Group is responsible for delivering the *SBC* to all Covered Persons and to other persons eligible for coverage in the manner and at the times required by the *ACA.*

## 6.17 System Access

The term "systems" as used in this provision means systems that we make available to the Group to facilitate the transfer of information in connection with this Policy.

## System Access

We grant the Group the nonexclusive, nontransferable right to access and use the functionaliti es contained within the systems, under the terms of this Policy. The Group agrees that all rights, title and interest in the systems and all rights in patents, copyrights, trademarks and trade secrets encompassed in the systems will remain ours. To access the systems, the Group will obtain, and be responsible for maintaining, at no expense to us, the hardware, software and Internet browser requirements we provide to the Group, including any amendments to those requirements. The Group is responsible for obtaining internet access.

The Group will not:

• Access systems or use, copy, reproduce, modify, or excerpt any of the systems documentat ion provided by us in order to access or use systems, for purposes other than as expressly permitted under this Policy.

• Share, transfer or lease its right to access and use systems, to any other person or entity which is not a party to this Policy.

The Group may designate a third party access to the systems on its behalf, provided the third party agrees to these terms and conditions. The Group remains responsible for the third party's compliance with the entire *System Access* provision.

## Security Procedures

The Group will use commercially reasonable physical and software-based measures and comply with our security procedures, as may be amended from time to time, to protect the system, its functionalities, and data accessed through systems from any unauthorized access or damage (including damage caused by computer viruses). The Group will notify us immediately if any breach of the security procedures, such as unauthorized use, is suspected.

## End of System Access

We have the right to end the Group's system access:

- On the date the Group does not accept the hardware, software and browser requirements provided by us, including any amendments to the requirements.

- Immediately on the date we reasonably determine that the Group has breached, or allowed a breach of, any applicable provision of this Policy. Upon the date this Policy ends, the Group agrees to cease all use of systems, and we will deactivate the Group's identification numbers and passwords and access to the system.

# Exhibit 1

1. **Parties.** The parties to this Policy are Neighborhood Health Partnership, Inc. and HARRIS PHARMACEUTICAL INC , the Group.

2. **Effective Date.** The effective date of this Policy is 12:01 a.m. on July 1, 2020 in the time zone of the Group's location.

3. **Place of Issuance.** We are issuing this Policy in Florida. The Policy is subject to the laws of the state of Florida and ERISA, unless the Group is not a private plan sponsor subject to ERISA. To the extent that state law applies, Florida law governs this Policy.

4. **Premiums.** We have the right to change the *Schedule of Premium Rates* or cost summary shown in each Exhibit 2, after a 45-day prior written notice on the first anniversary of the effective date of this Policy shown in the Group *Application*, on any following monthly due date, or on any date the provisions of this Policy are amended. We also have the right to change the *Schedule of Premium Rates*, retroactive to the effective date, if a Material Misrepresentation has resulted in a lower schedule of rates.

5. **Computation of Policy Charge.** A full month's Premium will be charged for any Covered Person who is covered under this Policy for any portion of a calendar month.

6. **Payment of the Policy Charge.** The Policy Charge is payable to us in advance by the Group on a monthly basis.

7. **Minimum Participation Requirement.** The minimum participation requirement for the Group is 75% of Eligible Persons excluding spousal waivers but no less than 50% of all Eligible Persons must be enrolled for coverage under this Policy.

8. **Minimum Contribution Requirement.** The Group must maintain a minimum contribution requirement of 50% of the Premium for each Eligible Person.

9. **Notice.** Any notice sent to us under this Policy must be sent to:

Neighborhood Health Partnership, Inc.
495 N. Keller Road
Maitland, FL 32751


Any notice sent to the Group under this Policy must be sent to:

HARRIS PHARMACEUTICAL INC
9090 PARK ROYAL DRIVE
FORT MYERS, FL 339080000

10. G/GA6Y8556BW Group Number

# Exhibit 2

1.   **Class Description.**

   See Group *Application*.

2.   **Eligibility.** The eligibility rules are established by the Group. The following eligibility rules are in addition to the eligibility rules shown in the Group *Application* and/or in *Section 3: When Coverage Begins* of the *Certificate of Coverage:*

   A.   The waiting or probationary period for newly Eligible Persons is as follows:

   60 days

   B.   Notwithstanding Group's eligibility rules for health plan participation, continued coverage under this Policy for a Covered Person on a leave of absence (LOA) will be available in accordance with the following, unless state, local or federal law requires a longer period of time:

   ♦   For a Covered Person on a non-medical LOA, coverage will be available for no longer than 13 consecutive weeks from the beginning of the LOA.

   ♦   For a Covered Person on a medical LOA, coverage will be available for no longer than 26 consecutive weeks from the beginning of the LOA.

   C.   Other:

   None

3.   **Open Enrollment Period.** An Open Enrollment Period of at least 31 days will be provided by the Group when Eligible Persons may enroll for coverage. The Open Enrollment Period will occur on an annual basis.

4.   **Effective Date for Eligible Persons.** The effective date of coverage for Eligible Persons who are eligible on the effective date of this Policy is July 1, 2020 .

   For an Eligible Person who becomes eligible after the effective date of this Policy, the effective date of coverage is the first day of the month following the last day of the required waiting period. Any required waiting period will not exceed 90 days.

5.   **Schedule of Premium Rates.**

   Monthly Premiums payable by or on behalf of Covered Persons are shown in the cost summary detailed through the new business premium confirmation process and renewal package.



# STATEMENT OF PLAN YEAR

**Important Notice:**

Federal health care law will often apply to your group health plan as of the first day of the Plan Year beginning after the effective date of the new law.

In the vast majority of situations, a group's Plan Year and its insurance Policy Year are the same twelve month period of time. "Plan Year" means the twelve month period that is listed in your plan document. "Policy Year" means the twelve month period from the policy's issuance date (or last renewal date) and its next renewal date.

Consequently, we are administering this insurance policy consistent with the presumption that your Plan Year and insurance Policy Year are the same twelve month period of time.

If this information is not correct please contact your UnitedHealthcare representative as soon as possible.

# Neighborhood Health Partnership, Inc.

# Group Policy
# For
# HARRIS PHARMACEUTICAL INC

# UnitedHealthcare
# NHP POS

**Group Number:**   G/GA6Y8556BW **Health Plan:**   BQ - 3W **Prescription Code:**   NHSE
**Effective Date:**   July 1, 2020

# Group Policy

# Neighborhood Health Partnership, Inc.

495 N. Keller Road
Maitland, FL 32751

1-800-899-6500

This Policy is entered into by Neighborhood Health Partnership, Inc. and the "Group," as described in Exhibit 1.

When used in this document, the words "we," "us," and "our" refer to Neighborhood Health Partnership, Inc.

Upon our receipt of the signed Group *Application* and payment of the first Policy Charge, this Policy is executed. The Group's *Application* is made a part of this Policy.

We agree to provide Benefits for Covered Health Care Services stated in this Policy, including the attached *Certificate(s) of Coverage* and *Schedule(s) of Benefits,* subject to the terms, conditions, exclusions, and limitations of this Policy. This Policy replaces and overrules any previous agreements relating to Benefits for Covered Health Care Services between the Group and us. The terms and conditions of this Policy will in turn be overruled by those of any future agreements relating to Benefits for Covered Health Care Services between the Group and us.

We are not an employer or plan administrator for any purpose with respect to the administration or provision of benefits under the Group's benefit plan. We are not responsible for fulfilling any duties or obligations of an employer or plan administrator with respect to the Group's benefit plan.

This Policy is effective on the date shown in Exhibit 1 and continues in force by the timely payment of the required Policy Charges when due, subject to the end of this Policy as provided in Article 5.

When this Policy ends, as described in Article 5, this Policy and all Benefits under this Policy will end at 12:00 midnight on the date the Policy ends.

This Policy is issued as described in Exhibit 1.

Issued By:

Neighborhood Health Partnership, Inc.

*Gregory Reidy,CEO*

*Neighborhood   Health  Partnership,  Inc.*

# Article 1: Glossary of Defined Terms

*The terms used in this Policy have the same meanings as those defined in Section 9: Defined Terms* in the attached *Certificate(s) of Coverage.* In addition, the following terms apply:

**Coverage Classification** - one of the categories of coverage described in Exhibit 2 for rating purposes (for example: Subscriber only, Subscriber and spouse, Subscriber and children, Subscriber and family).

**Material Misrepresentation** - any oral or written communication or conduct, or combination of communication and conduct, that is untrue and is intended to create a misleading impression in the mind of another person. A misrepresentation is material if a reasonable person would attach importance to it in making a decision or determining a course of action, including but not limited to, the issuance of a policy or coverage under a policy, calculation of rates, or payment of a claim.

# Article 2: Benefits

Subscribers and their Enrolled Dependents are entitled to Benefits for Covered Health Care Services subject to the terms, conditions, limitations and exclusions stated in the *Certificate(s) of Coverage* and *Schedule(s) of Benefits* attached to this Policy. Each *Certificate of Coverage* and *Schedule of Benefits,* including any Riders and Amendments, describes the Covered Health Care Services, required Co-payments, and the terms, conditions, limitations and exclusions related to coverage.

# Article 3: Premium Rates and Policy Charge

## 3.1 Premiums

Monthly Premiums payable by or on behalf of Covered Persons are shown in the *Schedule of Premium Rates* in Exhibit 2 of this Policy or in any attached *Notice of Change.*

We have the right to change the *Schedule of Premium Rates* as described in Exhibit 1 of this Policy. We also have the right to change the *Schedule of Premium Rates* at any time if the *Schedule of Premium Rates* was based upon a Material Misrepresentation that resulted in the Premium rates being lower than they would have been if the Material Misrepresentation had not been made. We have the right to change the *Schedule of Premium Rates* for this reason retroactive to the effective date of the *Schedule of Premium Rates* that was based on the Material Misrepresentation.

## 3.2 How Is the Policy Charge Calculated?

The Policy Charge will be calculated based on the number of Subscribers in each Coverage Classification that we show in our records at the time of calculation. The Policy Charge will be calculated using the Premium rates in effect at that time. Exhibit 1 describes the way in which the Policy Charge is calculated.

The Group is solely responsible for enrollment and Coverage Classification changes (including the end of a Covered Person's coverage) and for the timely payment of the Policy Charges.

## 3.3 When Is the Policy Charge Adjusted?

We may make retroactive adjustments for any additions or terminations of Subscribers or changes in Coverage Classification that are not reflected in our records at the time we calculate the Policy Charge. We will not grant retroactive credit for any change happening more than 45 days prior to the date we received notification of the change from the Group. We also will not grant retroactive credit for any calendar month in which a Subscriber has received Benefits.

The Group must notify us in writing within 60 days of the effective date of enrollments, terminations, or other changes. The Group must notify us in writing each month of any change in the Coverage Classification for any Subscriber.

If premium taxes, guarantee or uninsured fund assessments, or other governmental charges relating to or calculated in regard to Premium are either imposed or increased, those charges will be added to the Premium at that time. In addition, any change in law or regulation that affects our cost of operation may result in an increase

in Premium in an amount we determine.

## 3.4 How Is the Policy Charge Paid?

The Policy Charge is payable to us in advance by the Group as described under "Payment of the Policy Charge" in Exhibit 1. The first Policy Charge is due and payable on or before the effective date of this Policy. Future Policy Charges are due and payable no later than the first day of each payment period shown in item 6 of Exhibit 1, while this Policy is in force.

All payments shall be made in United States currency, in immediately available funds, and shall be sent to us at the address on the invoice, or at another address that we may designate in writing. The Group agrees not to send us payments marked "paid in full", "without recourse", or similar language. In the event that the Group sends such a payment, we may accept it without losing any of our rights under this Policy and the Group will remain obligated to pay any and all amounts owed to us.

Late payment charges are assessed for any Policy Charge not received within 10 calendar days following the due date. There will be a service charge added to the Group's account for any check returned for non-sufficient funds. The names of all Covered Persons must be attached when payment is made.

The Group will reimburse any attorney's fees and costs related to collecting past due Policy Charges.

## 3.5 Does a Grace Period Apply?

A grace period of 31 days will be granted for the payment of any Policy Charge not paid when due. During the grace period, this Policy will continue in force. The grace period will not extend beyond the date this Policy ends.

The Group is responsible for payment of the Policy Charge during the grace period. If we receive written notice from the Group to end this Policy during the grace period, we will adjust the Policy Charge so that it applies only to the number of days this Policy was in force during the grace period.

This Policy ends as described in Article 5.1 if the grace period expires and the past due Policy Charge remains unpaid.

# Article 4: Eligibility and Enrollment

## 4.1 What Are the Eligibility Rules?

Eligibility rules for each class are stated in Exhibit 2 and in the Group *Application*. The eligibility rules stated in Exhibit 2 are in addition to those shown in *Section 3: When Coverage Begins* of the *Certificate of Coverage*.

## 4.2 Initial Enrollment Period

Eligible Persons and their Dependents may enroll for coverage under this Policy during the Initial Enrollment Period. The Initial Enrollment Period is set by the Group.

## 4.3 Open Enrollment Period

An Open Enrollment Period will be provided for each class, as shown in Exhibit 2. During an Open Enrollment Period, Eligible Persons may enroll for coverage under this Policy.

## 4.4 Effective Date of Coverage

The effective date of coverage for enrolled Eligible Persons and their Dependents is stated in Exhibit 2.

# Article 5: End of Policy

## 5.1 When Does the Policy End?

This Policy and all Benefits for Covered Health Care Services will automatically end on the earliest of the dates shown below:

A.  On the last day of the grace period if the Policy Charge remains unpaid and written notice of termination was sent to the Group within 45 days after the due date. The Group remains responsible for payment of the Policy Charge for the period of time this Policy remained in force during the grace period.

B.  On the date specified by the Group, after at least 45 days prior written notice to us that this Policy will end.

C.  On the date we specify, after at least 45 days prior written notice to the Group, that this Policy will end due to the Group's violation of the participation and contribution rules as shown in Exhibit 1.

D.  On the date we specify, after at least 45 days prior written notice to the Group, that this Policy will end because the Group performed an act, practice or omission that constituted fraud or made an intentional misrepresentation of a fact in a written agreement signed by the Group that was material to the execution of this Policy or to the provision of coverage under this Policy. In this case, we have the right to rescind this Policy back to either:

- The effective date of this Policy.

- The date of the act, practice or omission, if later.

E.  On the anniversary renewal date we specify, after at least 90 days prior written notice to the Group, and to each Subscriber that this Policy will end because we will no longer issue this particular type of group health benefit plan within the applicable market.

F.  On the anniversary renewal date we specify, after at least 180 days prior written notice to the applicable state authority and to the Group and to each Subscriber, that this Policy will end because we will no longer issue any employer health benefit plan within the applicable market.

## 5.2 Payment When the Policy Ends

When the Policy ends, the Group is and will remain responsible to us for the payment of any and all Premiums which are unpaid at the time the Policy ends. This will include a pro rata portion of the Policy Charge for any period this Policy was in force during any grace period preceding the end of the Policy.

# Article 6: General Provisions

## 6.1 What Is the Entire Policy?

This Policy, the *Certificate(s) of Coverage,* the *Schedule(s) of Benefits,* the Group *Application*, and any Amendments, *Notices of Change*, and Riders, make up the entire Policy.

## 6.2 Dispute Resolution

Parties are encouraged to attempt, in good faith, to resolve the dispute amongst themselves. In the event the dispute is not resolved within 30 days after one party has received written notice of the dispute from the other party, and either party wishes to pursue the dispute further, the dispute may be submitted to arbitration as noted below.

The parties acknowledge that because this Policy affects interstate commerce, the *Federal Arbitration Act* applies. If the Group wishes to seek further review of the dispute, it must submit the dispute to arbitration according to the rules of the *American Arbitration Association.*

Arbitration will take place in Hartford County, Connecticut.

The matter must be submitted to arbitration within one year of the date notice of the dispute was received. The arbitrators will have no power to award any punitive or exemplary damages or to vary or ignore the provisions of this Policy, and will be bound by controlling law.

Arbitration is not binding and does not deprive the courts of jurisdiction. The Group does not forfeit any right to seek judicial resolution of the dispute as a result of arbitration.

No legal action may be brought to recover on this Policy within 60 days after written proof of loss has been given as required by this Policy. No such action may be brought after 5 years from the time written proof of loss is required to be given.

## 6.3 Statements by Group

All statements made by the Group, in the absence of fraud, will be deemed representations and not warranties and that no statement made for the purpose of effecting coverage will avoid coverage or reduce benefits. We will not use any statement made by the Group to void the Policy unless it is a fraudulent, written statement signed by the Group.

## 6.4 Amendments and Alterations

Amendments and Riders to this Policy are effective upon the Group's next anniversary date, unless otherwise permitted by law. Other than changes to Exhibit 2 stated in a *Notice of Change* to Exhibit 2, no change will be made to this Policy unless made by an Amendment or a Rider which is signed by one of our authorized executive officers and consistent with applicable notice requirements. No agent has authority to change this Policy or to waive any of its provisions.

## 6.5 Our Relationship with Providers and Groups

We have agreements in place that govern the relationship between us, our Groups and Network providers, some of which are affiliated providers. Network providers enter into agreements with us to provide Covered Health Care Services to Covered Persons.

The relationship between a Network provider and any Covered Person is that of provider and patient. The Network provider is solely responsible for the services provided. The relationship between any Group and any Covered Person is that of employer and employee, Dependent, or any other category of Covered Person described in the Coverage Classifications shown in this Policy.

The Group is solely responsible for enrollment and Coverage Classification changes (including the end of a Covered Person's coverage) and for the timely payment of the Policy Charges.

## 6.6 Records

We may require information related to the Policy, from the Group. Upon request, the Group must provide us with the requested information and proofs which may include:

• All documents provided to the Group by an individual in connection with coverage.

• The Group's payroll.

• Any other records pertinent to the coverage under this Policy.

We have the right to request this information at any reasonable time. This applies to all Covered Persons, including Enrolled Dependents whether or not they have signed the Subscriber's enrollment form.

We agree that such information and records will be considered confidential.

We have the right to release any and all records concerning health care services which are needed to administer the terms of this Policy including records for appropriate medical and quality review or as required by law or regulation.

During and after the term of this Policy, we and our related entities may use and transfer the information gathered under this Policy for research and analytic purposes.

## 6.7 Administrative Services

The services needed to administer this Policy and the Benefits provided under it will be provided in accordance with our standard administrative procedures or those standard administrative procedures of our designee. If the Group requests that administrative services be provided in a manner other than in accordance with these standard procedures, including requests for non-standard reports, the Group must pay for such services or reports at the then current charges for such services or reports.

We may offer to provide administrative services to the Group for certain wellness programs including, but not limited to, fitness programs, biometric screening programs and wellness coaching programs.

## 6.8 Employee Retirement Income Security Act (ERISA)

When this Policy is purchased by the Group to provide benefits under a health and welfare plan governed by the federal *Employee Retirement Income Security Act* 29 U.S.C., 1001 et seq., we will not be named as, and will not be, the plan administrator or the named fiduciary of the health and welfare plan, as those terms are used in ERISA.

## 6.9 Do We Require Examination of Covered Persons?

In the event of a question or dispute concerning Benefits for Covered Health Care Services, we may require that a Network Physician, of our choice examine the Covered Person at our expense unless a claim is pending.

## 6.10 What Happens When There Is a Clerical Error?

Clerical error will not deprive any individual of Benefits under this Policy or create a right to Benefits. Failure to report enrollments is not a clerical error. We will not provide retroactive coverage for Eligible Persons when the Group fails to report enrollments. Failure to report the end of coverage will not continue the coverage for a Covered Person beyond the date it is scheduled to end. Upon discovery of a clerical error, any needed adjustment in Premiums will be made. However, we will not grant any such adjustment in Premiums or coverage to the Group for more than 60 days of coverage prior to the date we received notificatio n of the clerical error.

## 6.11 Is Workers' Compensation Affected?

Benefits provided under this Policy do not substitute for and do not affect any requirements for coverage by workers' compensation insurance.

## 6.12 Conformity with Law

Any provision of this Policy which, on its effective date, is in conflict with the requirements of state or federal statutes or regulations (of the jurisdiction in which this Policy is delivered) is deemed to be amended to follow the minimum requirements of those statutes and regulations.

## 6.13 Notice

When we provide written notice regarding Policy administration to the Group's authorized representative. Once delivered, that notice is deemed notice to all affected Subscribers and their Enrolled Dependents. The Group is responsible for giving notice to Covered Persons on a timely basis.

Any notice sent to us under this Policy and any notice sent to the Group must be addressed as described in Exhibit 1.

## 6.14 Continuation Coverage

We agree to provide Benefits under this Policy for those Covered Persons who are eligible to continue coverage under federal or state law, as described in *Section 4: When Coverage Ends* of the *Certificate of Coverage.*

We will not provide any administrative duties with respect to the Group's compliance with federal or state law. All duties of the plan sponsor or plan administrator remain the sole responsibility of the Group, including but not limited to notification of COBRA and/or state law continuation rights and billing and collection of Premium.

## 6.15 Subscriber's Individual Certificate

We will issue *Certificate(s) of Coverage, Schedule(s) of Benefits,* and any attachments to the Group for delivery to each Subscriber. The *Certificate(s) of Coverage, Schedule(s) of Benefits,* and any attachments will show the Benefits and other provisions of this Policy. In addition, the *Certificate(s) of Coverage* and *Schedule(s) of Benefits* may be available online at www.myuhc.com.

## 6.16 Summary of Benefits and Coverage

We will provide a *Summary of Benefits and Coverage ("SBC"),* as required by the *Affordable Care Act* and related regulations *("ACA"),* to the Group for each benefit plan purchased. The Group is responsible for delivering the *SBC* to all Covered Persons and to other persons eligible for coverage in the manner and at the times required by the *ACA.*

## 6.17 System Access

The term "systems" as used in this provision means systems that we make available to the Group to facilitate the transfer of information in connection with this Policy.

## System Access

We grant the Group the nonexclusive, nontransferable right to access and use the functionalities contained within the systems, under the terms of this Policy. The Group agrees that all rights, title and interest in the systems and all rights in patents, copyrights, trademarks and trade secrets encompassed in the systems will remain ours. To access the systems, the Group will obtain, and be responsible for maintaining, at no expense to us, the hardware, software and Internet browser requirements we provide to the Group, including any amendments to those requirements. The Group is responsible for obtaining internet access.

The Group will not:

* Access systems or use, copy, reproduce, modify, or excerpt any of the systems documentation provided by us in order to access or use systems, for purposes other than as expressly permitted under this Policy.
* Share, transfer or lease its right to access and use systems, to any other person or entity which is not a party to this Policy.

The Group may designate a third party access to the systems on its behalf, provided the third party agrees to these terms and conditions. The Group remains responsible for the third party's compliance with the entire *System Access* provision.

## Security Procedures

The Group will use commercially reasonable physical and software-based measures and comply with our security procedures, as may be amended from time to time, to protect the system, its functionalities, and data accessed through systems from any unauthorized access or damage (including damage caused by computer viruses). The Group will notify us immediately if any breach of the security procedures, such as unauthorized use, is suspected.

## End of System Access

We have the right to end the Group's system access:

- On the date the Group does not accept the hardware, software and browser requirements provided by us, including any amendments to the requirements.

- Immediately on the date we reasonably determine that the Group has breached, or allowed a breach of, any applicable provision of this Policy. Upon the date this Policy ends, the Group agrees to cease all use of systems, and we will deactivate the Group's identification numbers and passwords and access to the system.

# Exhibit 1

1.  **Parties.** The parties to this Policy are Neighborhood Health Partnership, Inc. and HARRIS PHARMACEUTICAL INC , the Group.

2.  **Effective Date.** The effective date of this Policy is 12:01 a.m. on July 1, 2020 in the time zone of the Group's location.

3.  **Place of Issuance.** We are issuing the Policy in Florida. This Policy is subject to the laws of the state of Florida and ERISA, unless the Group is not a private plan sponsor subject to ERISA. To the extent that state law applies, Florida law governs this Policy.

4.  **Premiums.** We have the right to change the *Schedule of Premium Rates* or cost summary shown in each Exhibit 2, after a 45-day prior written notice on the first anniversary of the effective date of this Policy shown in the Group *Application*, on any following monthly due date, or on any date the provisions of this Policy are amended. We also have the right to change the *Schedule of Premium Rates*, retroactive to the effective date, if a Material Misrepresentation has resulted in a lower schedule of rates.

5.  **Computation of Policy Charge.** A full month's Premium will be charged for any Covered Person who is covered under this Policy for any portion of a calendar month.

6.  **Payment of the Policy Charge.** The Policy Charge is payable to us in advance by the Group on a monthly basis.

7.  **Minimum Participation Requirement.** The minimum participation requirement for the Group is 75% of Eligible Persons excluding spousal waivers but no less than 50% of all Eligible Persons must be enrolled for coverage under this Policy.

8.  **Minimum Contribution Requirement.** The Group must maintain a minimum contribution requirement of 50% of the Premium for each Eligible Person.

9.  **Notice.** Any notice sent to us under this Policy must be sent to:

    Neighborhood Health Partnership, Inc.
    495 N. Keller Road
    Maitland, FL 32751


    Any notice sent to the Group under this Policy must be sent to:

    HARRIS PHARMACEUTICAL INC
    9090 PARK ROYAL DRIVE
    FORT MYERS, FL 339080000

10. G/GA6Y8556BW  Group Number

# Exhibit 2

1.  **Class Description.**

    See Group *Application*.

2.  **Eligibility.** The eligibility rules are established by the Group. The following eligibility rules are in addition to the eligibility rules shown in the Group *Application* and/or in *Section 3: When Coverage Begins* of the *Certificate of Coverage:*

    A.  The waiting or probationary period for newly Eligible Persons is as follows:

        60 days

    B.  Notwithstanding Group's eligibility rules for health plan participation, continued coverage under this Policy for a Covered Person on a leave of absence (LOA) will be available in accordance with the following, unless state, local or federal law requires a longer period of time:

        ♦   For a Covered Person on a non-medical LOA, coverage will be available for no longer than 13 consecutive weeks from the beginning of the LOA.

        ♦   For a Covered Person on a medical LOA, coverage will be available for no longer than 26 consecutive weeks from the beginning of the LOA.

    C.  Other:

        None

3.  **Open Enrollment Period.** An Open Enrollment Period of at least 31 days will be provided by the Group when Eligible Persons may enroll for coverage. The Open Enrollment Period will occur on an annual basis.

4.  **Effective Date for Eligible Persons.** The effective date of coverage for Eligible Persons who are eligible on the effective date of this Policy is July 1, 2020 .

    For an Eligible Person who becomes eligible after the effective date of this Policy, the effective date of coverage is the first day of the month following the last day of the required waiting period. Any required waiting period will not exceed 90 days.

5.  **Schedule of Premium Rates.**

    Monthly Premiums payable by or on behalf of Covered Persons are shown in the cost summary detailed through the new business premium confirmation process and renewal package.



# STATEMENT OF PLAN YEAR

**Important Notice:**

Federal health care law will often apply to your group health plan as of the first day of the Plan Year beginning after the effective date of the new law.

In the vast majority of situations, a group's Plan Year and its insurance Policy Year are the same twelve month period of time. "Plan Year" means the twelve month period that is listed in your plan document. "Policy Year" means the twelve month period from the policy's issuance date (or last renewal date) and its next renewal date.

Consequently, we are administering this insurance policy consistent with the presumption that your Plan Year and insurance Policy Year are the same twelve month period of time.

If this information is not correct please contact your UnitedHealthcare representative as soon as possible.